**CASE NO. 25-1502**

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

BONNIE MANCHESTER, Plaintiff - Appellant,

v.

TOWN OF LUDLOW; TODD GAZDA, individually and in his official capacity as former Superintendent of Schools, Ludlow Public Schools; STACEY MONETTE, individually and in her official capacity as former Principal of Paul R. Baird Middle School; MARIE-CLAIRE FOLEY, individually and in her official capacity as former school counselor of Paul R. Baird Middle School; JORDAN FUNKE, individually and in her official capacity as former librarian of Paul R. Baird Middle School; Defendants - Appellees,

LUDLOW SCHOOL COMMITTEE; FRANK TIANO, individually and in their official capacity as Superintendent of Schools, Ludlow Public Schools, Defendants.

Appeal from the United States District Court for the District of Massachusetts, Springfield Division
Case No. 3-23-cv-30117-MGM

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

| | |
|---|---|
| Frank L. McNamara, Jr. | Mary E. McAlister |
| McNamara & Associates | Vernadette R. Broyles |
| 24 Leominster Road | Child & Parental Rights Campaign, Inc. |
| Lunenburg, MA 01462 | 5425 Peachtree Parkway, Suite 110 |
| (978) 333-9608 | Peachtree Corners, GA 30092 |
| franklmcnamara@gmail.com | 770.448.4525 |
| | mmcalister@childparentrights.org |
| | vbroyles@childparentrights.org |
| Ryan P. McLane | |
| McLane & McLane, LLC | |
| 269 South Westfield Street | Attorneys for Plaintiff - Appellant |
| Feeding Hills, MA 01030 | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ..................................................................... iii

SUMMARY OF ARGUMENT ................................................................... 2

ARGUMENT ............................................................................................ 4

I. Ms. Manchester's First Amendment Claims Were
Improperly Dismissed ........................................................................... 4

   A. The district court erred in dismissing Ms. Manchester's
claim for content and viewpoint discrimination. .................. 4

   B. The district court erred in dismissing Ms. Manchester's
claim for First Amendment retaliation. ................................... 6

     1. Ms. Manchester spoke as a citizen on a matter of
public concern. ........................................................................ 6

     2. Defendants' and the district court's invocation and
application of Pickering balancing was error. ................... 11

     3. Defendants' Prediction of Potential Disruption is
Unreasonable. ........................................................................ 15

     4. Plaintiff has sufficiently alleged but for causation. ....17

II. Ms. Manchester Sufficiently Alleged Facts to Support
An Equal Protection Claim. ............................................................. 20

   A. Plaintiff's Equal Protection claim is factually distinct
from her First Amendment claim. ........................................... 20

   B. Ms. Manchester adequately identified comparators. ... 22

III. The Allegations Plausibly Allege an Unwritten Protocol Aimed At Prohibiting Discussion of Children's Gender Identity With Parents. ..................................................26

IV. Defendants Improperly Narrow the Relevant Clearly Established Rights to Attempt to Satisfy Qualified Immunity. ..................................................31

CONCLUSION..................................................34

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS..................................................36

CERTIFICATE OF SERVICE..................................................37

# TABLE OF AUTHORITIES

**Cases**

*Aponte-Ramos v. Alvarez-Rubio*, 783 F.3d 905 (1st Cir. 2015) .............23

*Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.,*
  246 F.3d 1 (1st Cir.2001).....................................................................22-24

*Connick v. Myers*, 461 U.S. 138 (1983). ...................................................9

*Curran v. Cousins*, 509 F.3d 36 (1st Cir. 2007) .................... 10, 11, 15, 32

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)...........................................6, 7

*García-Catalán v. United States*, 734 F.3d 100 (1st Cir. 2013) ........24-26

*Hartman v. Moore*, 547 U.S. 250 (2006) ...........................................19, 20

*Jordan v. Carter*, 428 F.3d 67 (1st Cir. 2005)........................................8

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ................................31-33

*MacRae v. Mattos,* 106 F.4th 122 (1st Cir. 2024) ........................ 7, 15, 33

*Menard v. CSX Transportation, Inc.,*
  698 F.3d 40 (1st Cir. 2012).......................................................24, 25,30

*Mulero-Carrillo v. Roman-Hernandez,*
  790 F.3d 99 (1st Cir. 2015)...........................................................22, 25

*Nicolaci v. Anapol*, 387 F.3d 21 (1st Cir. 2004) ..............................13, 30

*Nieves v. Bartlett*, 587 U.S. 391 (2019) .................................................20

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) .....................................11

*Rosado-Quinones v. Toledo*, 528 F.3d 1 (1st Cir. 2008)..........................9

*Snyder v. Phelps*, 562 U.S. 443 (2011). ..............................................9, 10

**Statutes**

20 U.S.C. §1232(g) ........................................................................5

**Other Authorities**

U.S. Department of Education Finds California Department of
   Education Violated Federal Law by Hiding Students' "Gender
   Transitions" from Parents | U.S. Department of Education ................5

**Rules**

Fed. R. Civ. P.  8(d)(1) .............................................................8

iv

None of Defendants' arguments alter what this Court must conclude: the lower court erred in dismissing the Amended Complaint. Defendants raise six arguments regarding Ms. Manchester's First Amendment claims: 1) that the content and viewpoint claims failed to identify a governmental restriction that limits or prohibits speech; 2) that the speech at issue did not address a matter of public concern or, to the extent that it did it, the part that addressed a matter of public concern was insufficient to protect the rest; 3) that *Pickering* balancing was invoked at the Rule 12 (b)(6) stage; 4) that *Pickering* balancing, once invoked, was properly applied; 5) that actual disruption is not a precondition to adverse employment action and that the mere potential for disruption in this case justified termination; and 6) that there was no "causal connection" between the protected speech alleged and the termination of Ms. Manchester's employment.

Each argument fails. In advancing them, Defendants mischaracterize the pled facts, strain to impute fictive ones unsupported by the record, distort First Amendment law, and invert traditional Rule 12(b)(6) jurisprudence by asking this Court to view the record and draw

inferences therefrom in the light most favorable to Defendants rather than the other way around, thereby imposing impermissibly heightened pleading standards upon Ms. Manchester.

Stripping away the sophistry and obfuscation of Defendants' arguments, the Amended Complaint, read fairly, more than satisfies the pleading requirements of Rule 12(b)(6) and its gravamen stands unscathed: Ms. Manchester was initially disciplined, then terminated two months later, for the sole reason of having exercised her First Amendment right to engage in a serendipitous conversation with the parent (Mr. Foote) of an 11-year-old child (B.F.), off school grounds and after school hours, on matters of public concern that included the purported "gender identity" of the child. The dismissal of the First Amendment claims in the context of a Rule 12(b)(6) motion to dismiss was error.

The Amended Complaint also satisfies the pleading requirements for equal protection and municipal liability. Ms. Manchester alleges an equal protection claim that is distinct from her First Amendment claim and identifies proper comparators. She also alleges that the incongruities between the school's evaluation criteria and Defendants' termination of

her employment for "conduct unbecoming a teacher" for such communications point to a tacit protocol that conversations related to "gender identity" are exempted from written teacher evaluation standards and can subject a teacher to discipline.

## ARGUMENT

## I. Ms. Manchester's First Amendment Claims Were Improperly Dismissed.

### A. The district court erred in dismissing Ms. Manchester's claim for content and viewpoint discrimination.

Defendants argue that Count III was properly dismissed because "claims asserting content and viewpoint discrimination must first identify a governmental restriction that limits or prohibits speech," improperly implying that Ms. Manchester failed to identify such a restriction. (Appellees' Brief p. 4). However, as Ms. Manchester stated in her Opening Brief, the termination letter adverts to at least three governmental restrictions on speech that Defendants cited as grounds for her termination: the Department of Elementary and Secondary Education's (DESE) guidance, "state law and regulations regard [sic] student records/privacy" and the Family Educational Rights and Privacy

Act, 20 U.S.C. §1232(g) (FERPA)[1]. (Amended Complaint, "Am. Cpt.," Ex. D, App. 0079-0080). Ms. Manchester alleges throughout the First Amended Complaint that Defendants incorrectly interpreted and implemented DESE and FERPA to find that her speech was in violation. (Am. Cpt. ¶¶163, 166-167, n. 23; Ex. "D", App. 0053, 0054-0055; 0079-0080). The question of whether the interpretations were true is partly a factual dispute that cannot be decided at the Rule 12(b)6 stage. Instead, what matters for purposes of a Rule 12(b)(6) motion is that: (i) several "governmentally imposed restrictions" were advanced by Defendants themselves as grounds for traducing Ms. Manchester's First Amendment rights, (ii) those "governmentally imposed restrictions" were among the allegations of the Amended Complaint, and (iii) the district court erred

---

[1] Defendants' contention that Ms. Manchester's speech mentioning B.F.'s "gender identity" somehow violated FERPA is even less credible in light of the U.S. Department of Education's findings that California's Department of Education violated FERPA by directing that children's "gender identity" transitions be withheld from parents violated FERPA. U.S. Department of Education Finds California Department of Education Violated Federal Law by Hiding Students' "Gender Transitions" from Parents | U.S. Department of Education,https://www.ed.gov/about/news/press-release/us-department-of-education-finds-california-department-of-education-violated-federal-law-hiding-students-gender-transitions-parents.

in claiming that no such restrictions were alleged. The dismissal of Count III was error.

**B.** **The district court erred in dismissing Ms. Manchester's claim for First Amendment retaliation.**

**1.** *Ms. Manchester spoke as a citizen on a matter of public concern.*

"Speech involves matters of public concern when it can be fairly considered as *relating to any* matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (emphasis added). As alleged in the Amended Complaint, issues relating to transgender identity, gender dysphoria and transitioning teens had been generating considerable political and social concern within the Ludlow community in general, and the Baird School community in particular. (Am. Cpt. ¶¶51-61; 63-66; 69; App. at 0023-0027). Acknowledging those allegations, the district court applied the *Lane* test and determined, correctly, that "the complaint supports an allegation Plaintiff spoke in her personal capacity on a matter of public concern" (Memorandum Decision at 10-11, App. at 0090-0091), thus satisfying the first prong of the *Garcetti* test for a First

6

Amendment retaliation claim. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006); *MacRae v. Mattos*, 106 F.4th 122, 133 (1st Cir. 2024)).

Defendants now attempt to circumvent that lower court determination. They do so by constricting both the content of Ms. Manchester's speech and the language of the test, arguing that the speech concerned only "one child's gender identity" and that this is not a "subject of legitimate news interest." First, the Defendants misconstrue the test – the test is whether the *subject matter* of the speech is of legitimate concern, not the quantum of children that were the immediate subject of the speech. Second, the Amended Complaint described the subject matter of the speech that went well beyond the circumstances of one child. It related to issues of national, even international, concern, such as: the handling of teen "gender identity" issues, current practices of assisting students in "re-gendering," parental rights, mental health issues in teens, and the policy of some schools and states of concealing from parents information about transitioning their children, and other matters. (Am. Cpt. ¶143, App 0048; *see also,* n1).

Appellees concede that the gender identity issues are a public concern. However, they claim the standard is not satisfied because the

one paragraph of the Amended Complaint upon which they seize (Paragraph 143) that admittedly describes an alleged conversation on matters of public concern "relies primarily on conclusions." (Appellees' Brief, p. 9). First, the allegations of paragraph 143 are as much descriptive as conclusory. (Am. Cpt. ¶143, App 0048). Moreover, allegations by their very nature are conclusory; an allegation is no less valid because it is formulated in conclusory form. Further, the applicable federal rules banish legal, not factual, conclusions from pleadings, stating only that an allegation need only be "simple, concise, and direct" and that "No technical form is required." Fed. R. Civ. P. 8(d)(1).

This Court's analysis in *Jordan v. Carter*, 428 F.3d 67, 73 (1st Cir. 2005) applies here. In that case this Court noted that the allegations of the Complaint were "terse," lacking specifics on the substance of the relevant telephone conversations, including only the general subject matter of the conversations and identifying the other parties only as "other officers and superiors". *Id*. Nevertheless, the Court concluded: "[d]rawing all inferences in favor of the plaintiffs, we cannot reject the possibility that at least some of the speech would fall within an area of public concern" … therefore "[w]ith the record undeveloped, and the facts

thus still capable of tilting in either direction, we accept for present purposes that the public concern prong is satisfied." *Id.* The same should be true here.

Furthermore, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the *whole record.*" *Connick v. Myers*, 461 U.S. 138, 147-148 (1983) (emphasis added). *See also, Rosado-Quinones v. Toledo*, 528 F.3d 1, 5 (1st Cir. 2008). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder v. Phelps*, 562 U.S. 443, 454 (2011).

Defendants urge the abandonment of traditional 12(b)(6) analysis in favor of a piecemeal examination of a single paragraph (Paragraph 143) of the Amended Complaint, out of context, and in contravention of Supreme Court and First Circuit precedent. As the Supreme Court said in *Snyder*, in First Amendment cases, the reviewing court is obligated "to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the

field of free expression.'" 562 U.S. at 453. The district court failed to do so.

In a final attempt to persuade this Court to overturn the district court's finding, Defendants cite *Curran v. Cousins*, 509 F.3d 36, 48 (1st Cir. 2007) for the proposition that the presence of some protected speech in a communication does not inoculate the remainder from discipline. But *Curran* is distinguishable. The speech at issue in *Curran* was not a single conversation but a series of statements leading to plaintiff's termination, the first of which had no First Amendment protection. Further, many of the statements of the plaintiff in *Curran* were lurid, offensive, and violent, likening plaintiff's superior to Hitler, and insulted the integrity of fellow employees. The termination letter in *Curran* described the speech as "threatening and menacing, and would tend to adversely affect the operations of the Department …." *Id.* That is not the case here. Ms. Manchester's conversation with Mr. Foote contained none of the elements present in *Curran.* At this stage of the record it is simply premature to rule unequivocally that Ms. Manchester's speech did not address a matter of public concern.

### 2. Defendants' and the district court's invocation and application of Pickering balancing was error.

This Court has correctly stated that *Pickering* balancing, named for *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968), is often difficult to engage in when considering a Rule 12(b)(6) motion. *Decotiis v. Whittemore,* 635 F.3d 22, 34-35 (1st Cir. 2011). This case offers a textbook example of why. Here, the lower court and Defendants err both in applying the test and in their conclusion.

Ms. Manchester's and the public's First Amendment interests emerge clearly from the allegations of the Amended Complaint, but those of the school do not. The result is that Defendants, like the lower court, must strain to conjure from the Amended Complaint and exhibits some legitimate governmental interest that was not already threatened prior to Ms. Manchester's brief conversation with Mr. Foote. But they do so in vain. The record does not contain a single example of "parental backlash" or instances where Ms. Manchester's conversation with Mr. Foote, as opposed to other events already occurring at the school, (i) threatened "a collegial atmosphere, harmonious relations among teachers and respect for the curriculum," (ii) disrupted the efficient administration of the

school, (iii) prevented "the person in charge" from having and maintaining "close working relationships with each of her teachers," or (iv) threatened the physical or psychological well-being of "transgender minors." The Complaint alleges some of those concerns were present well before Ms. Manchester's conversation with Mr. Foote. (*See* Am. Cpt. ¶¶76-106, App. 0029-0036). However, post-speech examples of these elements simply do not appear anywhere in the record. What does appear in the record are allegations that clearly state that Ms. Manchester's speech "did not affect in any way the operations of the school or impair its ability to operate efficiently and effectively" (Am. Cpt. ¶171, App. 0056-0057). These are unrebutted allegations that for purposes of a 12(b)(6) motion must be taken as true. *Decotiis*, 635 F.3d at 28.

Tellingly, the three letters written by the school to Ms. Manchester following her conversation with Mr. Foote neither explicitly refer to nor even suggest disruption to the school as a result of that conversation. The first, which placed Ms. Manchester on paid administrative leave, was delivered approximately two weeks following Ms. Manchester's conversation with Mr. Foote (when memories of any resulting disruptions

would have been fresh), invoked amorphous phrases of "conduct unbecoming of a teacher" and "inappropriate communications with the parents," but contained nothing upon which a trier of fact could infer disruption to the school. (Am. Cpt. Ex. B, App. 0077). The second letter is equally devoid of references to any sort of disruption. (Am. Cpt. Ex. C App. 0078). That letter does reproach Ms. Manchester for speaking to Mr. Foote "without having any conversation with administration or other colleagues," but it cites no rule, regulation or policy that Ms. Manchester violated. Evidence of school disruption cannot be conjured from that letter, especially in the context of a motion to dismiss when all inferences are to be resolved in Ms. Manchester's favor. *Nicolaci v. Anapol*, 387 F.3d 21, 24 (1st Cir. 2004). The third letter terminating Ms. Manchester's employment was delivered to her two and a half months following Ms. Manchester's conversation with Mr. Foote after the school's investigation should have identified any disruptive effects caused by Ms. Manchester's speech. (Am. Cpt. Ex. D, App. 0079-0080). Again, the letter does not contain a single reference to any disruption or inefficient functioning resulting from the punished speech, even though the letter purports to compile all the alleged conduct engaged in by Ms. Manchester that would

justify her termination ("you have engaged in the following conduct"). (*Id.*).

In short, the three letters from the school, read in the light most favorable to Ms. Manchester, as they must be, reflect at most a single incident of citizen speech with a parent that allegedly disregarded vague, unarticulated, and unwritten protocols and thereby vexed the school administration. That and no more. The factors that could justify restriction of an employee's First Amendment interests in favor of legitimate governmental interests in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission are wholly absent.

Put simply, Ms. Manchester's conversation with Mr. Foote was not so much a threat to legitimate governmental interests as a reauthentication of the traditional role of the model Baird School teacher communicator as enshrined in the school's performance criteria: a "proactive and personalized communication with families about student performance and learning … demonstrating understanding and appreciation of different families home language, culture, and values." (Am. Cpt. ¶¶42, 43, App.0020-0021).

### *3. Defendants' prediction of potential disruption is unreasonable.*

Defendants were quick to condemn what they viewed as conclusory allegations in the Amended Complaint, but now deploy them in argument, stating that "the district court's prediction that flouting a directive designed to protect a student could undermine both employee discipline and the school's substantial interest in protecting transgender students, including from parental backlash, is clearly reasonable." (Appellees' Brief at 13). Defendants are mistaken. The rule in this circuit requires a government employer's prediction of disruption to be reasonable *based upon the record. MacRae*, 106 F.4th at 140 (emphasis added). This Court considers whether the government employer can point to "specific facts and circumstances...that support [its] prediction" that an employee's speech would be disruptive. *Id.* In *MacRae*, those specific facts and circumstances included the employee's TikTok posts becoming the subject of substantial media coverage and the same posts becoming the subject of controversy and extraordinary disruption in a neighboring school system. *Id.* at 139. In *Curran*, it included menacing posts about departmental supervisors referencing Hitler and Nazis that directly impaired discipline, disrupted harmony, undermined confidence in the

administration and interfered with the regular operation of the governmental enterprise. 509 F.3d at 50.

There are no similar facts suggesting any disruption alleged here. To the contrary, the allegations of the Amended Complaint point to Ms. Manchester furthering, not disrupting, the governmental interests cited by the district court. Ms. Manchester was commended for protecting vulnerable, at-risk students. (Am. Cpt. ¶¶19, 30. App. 0013, 0016). In particular, Ms. Manchester worked with the Foote parents and B.F. regarding B.F.'s perceived declining mental health and gender dysphoria at the child's request. There are no allegations suggesting that B.F. objected to Ms. Manchester's conversation with her father. Employee discipline was hardly jeopardized, as there were no clearly defined (much less written) school policies prohibiting such communications with parents. (Am. Cpt. ¶¶ 140, 165, 236 App. 0047-0048, 0054, 0072). The email from the school guidance counselor contained no such express directive. (Am. Cpt. ¶132, App. 0044-0045).

Defendants cannot maintain that their allegations of potential disruption are reasonable in the face of uncontroverted allegations to the contrary. This is particularly true in light of the District's evaluative

16

criteria for teachers that encourages (indeed requires for a certain rating) "frequent, proactive, and personalized" communication with families about student performance and learning" while demonstrating understanding of, appreciation for, and sensitivity to "different families' home language, culture, and values." (Am. Cpt. ¶¶42, 43, App. 0020-0021).

There is nothing to place on the government's side of the scale as the record contains no examples of disruption following upon, much less caused by, Ms. Manchester's conversation with Mr. Foote. It follows, *a fortiori*, that Ms. Manchester's First Amendment interests are not, indeed cannot be, outweighed in the *Pickering* balance.

### 4. *Plaintiff has sufficiently alleged but for causation.*

Defendants argue that Plaintiffs did not allege "but for" causation because Ms. Manchester's termination was based only on the portion of the conversation between Ms. Manchester and Mr. Foote which addressed B.F.'s "gender identity," that according to Defendants, is not a "matter of public concern" and therefore not protected by the First Amendment. (Appellees' Brief p. 16). Defendants' argument does not comport with precedent or the facts as alleged in the Amended

Complaint. First, as discussed, *supra,* Section IB1, the subject matter of the conversation between Ms. Manchester and Mr. Foote, the mental health of his daughter, including her assertion of a discordant gender identity, fairly *related* to matters of political, social, or other concerns to the community, thus constituting a matter of public concern under *Lane,* 573 U.S. at 241 (emphasis added). (Am. Cpt. ¶¶ 143-144, App. 0048-0049).

Furthermore, neither the allegations of the Amended Complaint nor Defendants' letters suspending Ms. Manchester and terminating her employment articulated that the decisions were based solely on the portions of the conversation addressing B.F.'s asserted "gender identity." Instead, Defendants said that they were taking adverse employment actions against Ms. Manchester because a conversation with a parent that until that time was commendable was now somehow "conduct unbecoming a teacher." (Am. Cpt. ¶ 148, App. 0050, Exhibit B, App. 0077, ¶ 154, App. 0051, Exhibit C, App. 0078, Exhibit D, App. 0079-0080). Defendants also claimed that Ms. Manchester was "insubordinate," acted against the wishes of the student and direction of the Guidance Counselor, and violated DESE Guidance. *(Id*.). The allegations of the

18

Amended Complaint show that Ms. Manchester did not disregard any directive from Ms. Foley that Mr. Foote not be told about his daughter's email, acted in accordance with the wishes of the student and did nothing that violated DESE guidance related to children's rights to control information, which occurs at age 14. (Am. Cpt. ¶¶ 164-171, App. 0054-0056). Defendants claimed that Ms. Manchester was somehow untruthful during the investigation, which the allegations of the Complaint utterly refute. (Am. Cpt. ¶ 168, App. 0056). Rather than showing a clear path of causation from one portion of the off-campus conversation to termination, the allegations of the Amended Complaint and Defendants' documents related to the termination of Ms. Manchester's employment demonstrate that the question of causation is in dispute and cannot be determined in a Rule 12b(6) motion.

At the Rule 12b(6) stage, allegations of causation in employment retaliation cases where the government actor allegedly harboring the animus is also the individual taking the adverse action does not require detailed proof of a connection between the motive and the adverse action. *Hartman v. Moore*, 547 U.S. 250, 260 (2006). In employment retaliation cases, "establishing the causal connection between a defendant's animus

and a plaintiff's injury is straightforward." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). "The cases have simply taken the evidence of the motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other." *Hartman,* 547 U.S. at 260. That is the case here. The allegations describing the retaliatory motive behind Defendants' actions against Ms. Manchester and the termination of her employment sufficiently allege that the motive caused the termination for purposes of a motion to dismiss.

## II. Ms. Manchester Sufficiently Alleged Facts to Support An Equal Protection Claim.

### A. Plaintiff's Equal Protection claim is factually distinct from her First Amendment claim.

Examination of Ms. Manchester's equal protection claim in context demonstrates the error of Defendants' conclusion that it is merely a restatement of the First Amendment claim based on the conversation with Mr. Foote. (Appellees' Brief, p. 20). A review of the allegations related to the equal protection claim reveals that is based not only on the conversation that was the subject of her termination, but also on a history of differential, retaliatory conduct aimed at Ms. Manchester's efforts to advocate for her students throughout her tenure.  (Am. Cpt. ¶¶215-222, App. 0060-0061).

Ms. Manchester alleged that Defendants engaged in selective and disparate treatment of her based on "an intent to prohibit plaintiff from exercising constitutionally protected rights of speech," including not just the conversation with Mr. Foote, but her history of speaking up on behalf of her students on other topics. (Am. Cpt, ¶220, App. 0060-0061). That history is detailed in Paragraphs 75-106 of the Amended Complaint. (Am. Cpt, ¶ 75-106 App. 0029-0036). It describes differential treatment of Ms. Manchester vis-a-vis other teachers who spoke out against inappropriate library resources and other student protective actions outside of the conversation with Mr. Foote. (*Id.*). It was those facts as well as the actions related to her conversation with Mr. Foote that were the subjects of the equal protection claim. Therefore, the claim is not merely a restatement of the claim arising from the adverse employment action resulting from the conversation with Mr. Foote.

**B. Ms. Manchester adequately identified comparators.**

Citing only one relevant paragraph of the Amended Complaint, Defendants argue that that paragraph was "far too broad" to meet Ms. Manchester's burden of alleging similarly situated comparators and assert that Ms. Manchester must further identify her "putative

comparators." (Appellees' Brief, p. 21). Defendants' argument that Ms. Manchester must provide additional details regarding comparators and that her allegations are far too broad breaks with precedent.

For an equal protection claim to survive a motion to dismiss, "a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff was] selectively treated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 106 (1st Cir. 2015) (citing *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir.2001). "The formula for determining whether individuals or entities are similarly situated ... is not always susceptible to precise demarcation." *Id.* "Nevertheless, the standard is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Id.* In *Mulero-Carrillo,* this Court found that plaintiffs' attempt to compare those who took the Puerto Rico medical licensing examination with those who took the United States medical licensing examination was unavailing. *Id.* This Court found that a

differential passing score on the two examinations could not support a plausible equal protection violation when the examinations asked different questions. "Takers of one exam are not equally situated with takers of the other exam." *Id.* Similarly, this Court rejected plaintiffs' assertion that two groups of employees who were hired through closed job postings were "similar enough" to plaintiffs' situation of being similarly hired and then having the hiring annulled to state an equal protection claim in *Aponte-Ramos v. Alvarez-Rubio*, 783 F.3d 905, 908–09 (1st Cir. 2015). "Plaintiffs fail to identify employees of a similar category hired, promoted, or otherwise appointed in a similar way who were not annulled following a similar audit." *Id.* at 209. As this Court said in *Barrington Cove*, "exact correlation is neither likely nor necessary, but the cases must be fair congeners." 246 F.3d at 8. The comparators must be similar in all relevant respects, not just in one critical respect as was alleged by the plaintiff. *Id.* "In other words, apples should be compared to apples." *Id.*

Here, the comparators listed by Ms. Manchester are similar in all relevant respects. The relevant comparators, as pleaded, are other teachers who, like Ms. Manchester, communicated with parents about

sensitive student welfare issues, such as depression, family problems, academic struggles, or, Ms. Manchester alleges, even "gender identity" and were praised for such proactive engagement, whereas Ms. Manchester alone was terminated when the sensitive issue was "gender identity." (Am. Cpt. ¶¶ 215-217, App. 0067-0068).

Notably, in *Barrington*, this Court emphasized that the information necessary for the plaintiff to describe all of the relevant facts regarding the comparators was available to it. 246 F.3d at 9.

> Neither in its amended complaint, nor elsewhere in the record on appeal, is there any indication that the information Barrington would have needed in order to evaluate whether its co-applicants were "similarly situated" in these three important respects was inaccessible, let alone in the sole possession or control of appellees (and hence, reasonably accessible to Barrington only through discovery procedures postdating the Rule 12(b)(6) stage).

*Id.* Therefore, *Barrington* was unlike *García-Catalán v. United States*, 734 F.3d 100, 104–05 (1st Cir. 2013), *Menard v. CSX Transportation, Inc.*, 698 F.3d 40, 45 (1st Cir. 2012), or this case, where information needed to state a plausible claim for relief is solely within the Defendants' control. In such cases, plaintiffs are to be afforded "some latitude" in meeting the plausibility pleading standards. *García-Catalán,* 734 F.3d at 104. A plaintiff cannot be expected to know details that are known only

to the defendants without discovery. *Id.; See also, Menard,* 698 F.3d at 45 (the "interests of justice" may warrant remand for limited discovery to fill in the informational gaps). In this case, Ms. Manchester cannot be expected to know the contents of records regarding other teachers' communications with parents, whether they discussed a child's "gender identity," and/or whether they were subject to discipline because of their conversations, as was Ms. Manchester. That information is necessarily within the control of Defendants. Therefore, Ms. Manchester should be afforded "some latitude" in satisfying the plausibility pleading standard for similarly situated comparators and permitted to proceed to discovery to obtain any necessary additional information.

A prudent person, looking objectively at the incidents as alleged in the Complaint, would think the teachers who also engaged in parental communications regarding their children's well-being, including "gender identity" were roughly equivalent to and similarly situated to Ms. Manchester, a teacher who engaged in parental communications regarding children's well-being, including "gender identity." *See Mulero-Carrillo,* 790 F.3d at 106. To the extent that more details regarding the comparators are necessary, Ms. Manchester should be provided the

latitude to obtain that information and show that she was differentially treated vis-a-vis her similarly situated counterparts. *Garcia-Catalan*, 734 F.3d at 104. "Given what the appellant has set forth in her complaint, it is reasonable to expect that 'modest discovery may provide the missing link' that will allow the appellant to go to trial on her claim." *Id.* at 105.

The Order allowing the motion to dismiss should be reversed and Ms. Manchester permitted to proceed with discovery.

## III. The Allegations Plausibly Allege an Unwritten Protocol Aimed At Prohibiting Discussion of Children's Gender Identity With Parents.

Defendants' citation to a single paragraph in the Complaint that alleges that there was an unwritten, unarticulated protocol that contrary to written policies, "prohibited private conversations between parents and teachers regarding a matter of grave concern to their children," contrary to their argument, shows that Ms. Manchester has alleged that there was such a protocol. (Appellees' Brief, pp. 24-25, citing Paragraph 194). Furthermore, throughout the Amended Complaint, Ms. Manchester raises allegations of statements and actions by District officials that are incongruous with their written policies and contradict administrative

guidance from which it must be inferred that Defendants were acting pursuant to an unwritten protocol.

As well as alleging the existence of the policy in Paragraph 194, referenced above, Ms. Manchester alleged that Ms. Monette "cited an unwritten and previously unarticulated (much less enforced) policy that purportedly prohibits teachers from communicating to the parents of their students about any matter relating to their children's gender identity" in the letter terminating Ms. Manchester's employment. (Am. Cpt. ¶162, App. 0062). Ms. Manchester alleged that contrary to exemplary performance reviews for her communication with parents regarding their students' performance and well-being, her conversation with Mr. Foote, which complied with the teacher performance protocol was deemed "conduct unbecoming a teacher" with no explanation for the differential treatment. (Am. Cpt. ¶¶ 136, 140, App. 0046-0048). The only difference between prior conversations for which Ms. Manchester was commended and the conversation with Mr. Foote for which she was terminated was the fact that it addressed the issue of "gender identity." There was no written policy excepting "gender identity" from expectations regarding parental interaction or otherwise prohibiting

discussion of that topic with parents. (Am. Cpt. ¶ 231, App. 0071). Consequently, the conversation could not be the subject of adverse employment action unless it violated an underlying unwritten protocol prohibiting discussion of that topic with parents.

Ms. Manchester alleged that despite engaging in regular conversations with B.F.'s parents at the request of B.F. related to her mental health and gender identity, she was facing termination for having discussed the issue without B.F.'s consent. (Am. Cpt. ¶¶ 164-171, App. 0054-0057). She alleged that she was facing termination because she shared "confidential information" when in fact there were no written directives or statements in the communications stating that the information was confidential and not to be shared with parents. (Am. Cpt. ¶¶ 133, 137, App. 0045-0047 ¶¶164-171, App. 0054-0057). Ms. Manchester also alleged that Defendants terminated her employment for acting contrary to DESE Guidance in sharing information with the Foote parents, when in fact under the Guidance as promulgated by DESE the parents had the right to the information. (Am. Cpt. ¶¶ 166-167, App. 0054-0055). Defendants' contention that speaking to Mr. Foote about his 11-year-old daughter's "gender identity" with her permission somehow

violated the DESE Guidance again points to Defendants having interpreted the Guidance to prohibit sharing "gender identity" information with parents of children under age 14 via an unwritten protocol.

These incongruous actions by Defendants, particularly terminating Ms. Manchester's employment for conduct for which she was rated as an exemplary employee point to some unwritten directive labeling information regarding "gender identity" as outside the boundaries of acceptable conversation with parents. Since there was no written policy or other directive prohibiting discussion of that topic (Am. Cpt. ¶ 231, App. 0071), Ms. Manchester had no reason to believe that engaging in the same type of conversation that she had engaged in with Mr. Foote for years related to his child's mental health concerns would be regarded as "conduct unbecoming a teacher" once she uttered the words "gender identity." This is particularly true in light of the fact that she had B.F.'s permission to speak to her parents about those issues. (Am. Cpt. ¶121, App. 0040). Defendants terminated Mrs. Manchester's employment for a conversation that was not prohibited by any written directive. The only explanation for that incongruous conduct is that Defendants were

following an unwritten protocol that prohibited discussion of "gender identity" with parents. At the Rule 12b(6) stage all reasonable inferences are to be drawn in Ms. Manchester's favor. *Nicolaci,* 387 F.3d at 24. The district court erred in not drawing the inference of an unwritten protocol in her favor here.

The dismissal of Ms. Manchester's claims against the District again point to the consequences of failing to afford Ms. Manchester "some latitude" in meeting the pleading standards for municipal liability on the part of Defendants. Ms. Manchester cannot be expected to have information about an unwritten district protocol, practice or directive that, contrary to published standards for teachers, requires that teachers not communicate with parents regarding their children's gender identity under penalty of termination. Only school officials would have information regarding the existence and nature of an unwritten rule. Being unwritten and not in the public domain, it would not be accessible except through discovery.

As was true in *Menard,* the "interests of justice" warrant permitting Ms. Manchester to obtain discovery to fill in any informational gaps. 698 F.3d at 45. Defendants should not be permitted

to benefit from creating an unwritten policy, not notifying teachers that it exists, and then terminating Ms. Manchester's employment for failing to follow it.

## IV. Defendants Improperly Narrow the Relevant Clearly Established Rights to Attempt to Satisfy Qualified Immunity.

As this Court said in *Limone v. Condon*, "Courts must be careful not to permit an artful pleader to convert the doctrine of qualified immunity into a hollow safeguard simply by alleging a violation of an exceedingly nebulous right." 372 F.3d 39, 46 (1st Cir. 2004). However, Courts must be equally careful "not to permit a defendant to hijack the plaintiff's complaint and recharacterize its allegations so as to minimize his or her liability." *Id.* That is what Defendants attempt to do in arguing that qualified immunity should be applied to the individual Defendants. (Appellees' Brief, pp. 18-19, 22). As was true in *Limone,* Defendants here employ "a self-serving mischaracterization of the factual allegations set out in the amended complaint" to create impermissibly narrow definitions of the relevant constitutional rights. *Id.* at 47. As were the defendants in *Limone,* Defendants here are asking this Court to disregard the forest of Ms. Manchester's retaliation and equal protection

31

claims and "focus single-mindedly" on particular "trees" of sub-elements of the claims. *See Id.* As this Court said, "[t]he qualified immunity doctrine does not compel courts to take so myopic a view." *Id.*

In analyzing Ms. Manchester's retaliation claim, the question is whether an employee spoke as a private citizen on a matter of public concern, whether the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently, and whether the protected speech was a substantial or motivating factor in the adverse employment decision. *Curran,* 509 F. 3d at 45. Determining whether qualified immunity applies, therefore, is not merely determining whether it is clearly established that discussing an individual's gender identity is a matter of public concern, as Defendants state. (Appellees' Brief, pp. 18-19). Instead, Defendants must show that it is clearly established that a private conversation on a matter of public concern held off campus and not communicated to the school community can reasonably be predicted to cause substantial disruption in the District's operations so as to tilt the balance of rights in favor of the District. *MacRae*, 106 F.4th at 140. As discussed *supra,* Defendants have not met the standard.

On the equal protection claim, the question is whether a prudent person, looking objectively at the incidents and players, would think that the other teachers identified by Ms. Manchester were roughly equivalent and similarly situated but treated differently, *i.e.,* not subject to adverse employment action for discussing a child's gender identity with parents, not whether the other teachers "disregarded an email or similar request," as Defendants claim. (Appellees' Brief, p. 22). Defendants' version of the clearly established right again relies on misstatement of the operative facts, as was true in *Limone.* The allegations of the Amended Complaint show that Ms. Manchester did not disregard any directive contained in either Ms. Foley's or B.F.'s email. (Am. Cpt. ¶¶ 164-171, App. 0054-0056). The allegations also show that Ms. Manchester's conversation with Mr. Foote was at the request of B.F., not against her wishes. (Am. Cpt. ¶121, App. 0040). Consequently, whether other teachers "disregarded" an email or other request is not a relevant fact in evaluating the equal protection claim for purposes of qualified immunity. Instead, the question is whether it is clearly established that terminating Ms. Manchester for "conduct unbecoming a teacher" for conversing with a parent regarding his child's mental health issues and "gender identity"

when other teachers who had similar conversations with parents faced no adverse employment action violated equal protection. That question cannot be answered absent further factual discovery.

## CONCLUSION

Defendants' arguments as framed in their Answering Brief do not provide a sound basis for affirmance. Accordingly, Plaintiff-Appellant Bonnie Manchester respectfully requests that this Court reverse the district court's dismissal of her federal claims, so that Ms. Manchester's claims may be fully adjudicated on the merits.

Dated: February 5, 2026.

Frank L. McNamara, Jr.
McNamara & Associates
24 Leominster Road
Lunenburg, MA 01462
(978) 333-9608
franklmcnamara@gmail.com

Ryan P. McLane
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
(413) 789-7771

*/s/ Mary E. McAlister*
Mary E. McAlister
Vernadette R. Broyles
Child & Parental Rights Campaign,
Inc.
5425 Peachtree Parkway, Suite 110
Peachtree Corners, GA 30092
770.448.4525
mmcalister@childparentrights.org
vbroyles@childparentrights.org
Attorneys for Plaintiff - Appellant

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). Not counting the items excluded from the length by Fed. R. App. P. 32(f), this document contains 6,209 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Century Schoolbook font.

DATED: February 5, 2026.

/s/ *Mary E. McAlister*
Mary E. McAlister
*Attorney for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2026, I caused the foregoing to be filed electronically with this Court. Service will be effectuated on the following via the Court's ECF/electronic notification system:

David S. Lawless
Nancy Frankel Pelletier
ROBINSON DONOVAN, P.C
1500 Main Street, Suite 2300
Springfield, MA 01115
dlawless@robinsondonovan.com
npelletier@robinsondonovan.com
Tel. (413) 732-2301
Attorneys for Defendants-Appellees

/s/ *Mary E. McAlister*
Mary E. McAlister
*Attorney for Plaintiff-Appellant*